IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                          Plaintiff,

v.

GERSHOW RECYCLING CORPORATION,

                          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**FILED**
**CLERK**

3:33 pm, Oct 08, 2024

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**CONSENT JUDGMENT**

TABLE OF CONTENTS

I.      JURISDICTION AND VENUE..................................................................2
II.     APPLICABILITY ....................................................................................2
III.    OBJECTIVES ..........................................................................................3
IV.     DEFINITIONS .........................................................................................4
V.      CIVIL PENALTY ....................................................................................5
VI.     COMPLIANCE REQUIREMENTS .........................................................6
VII.    REPORTING REQUIREMENTS...........................................................15
VIII.   STIPULATED PENALTIES ..................................................................17
IX.     FORCE MAJEURE.................................................................................20
X.      DISPUTE RESOLUTION ......................................................................22
XI.     INFORMATION COLLECTION AND RETENTION ..........................25
XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ...............27
XIII.   COSTS ...................................................................................................28
XIV.    NOTICES ...............................................................................................29
XV.     EFFECTIVE DATE ...............................................................................30
XVI.    RETENTION OF JURISDICTION ........................................................31
XVII.   MODIFICATION...................................................................................31
XVIII.  TERMINATION ....................................................................................31
XIX.    PUBLIC PARTICIPATION...................................................................32
XX.     SIGNATORIES/SERVICE ....................................................................32
XXI.    INTEGRATION .....................................................................................33
XXII.   26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION ..................33
XXIII.  HEADINGS ...........................................................................................33
XXIV.   FINAL JUDGMENT..............................................................................33

A.      Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Judgment ("Consent Judgment"), alleging that Defendant, Gershow Recycling Corporation ("Gershow"), violated the Clean Air Act and provisions of the New York State Implementation Plan ("NY SIP") implementing the Clean Air Act.

B.      Specifically, the Complaint alleges that Gershow failed to implement Reasonably Available Control Technology ("RACT") to control emissions of volatile organic compounds ("VOC") at its metal shredding facility located at 71 Peconic Avenue, Medford, New York 11763 (the "Facility"). The Complaint further alleges that the Facility has the annual potential to emit 25 tons or more of VOC, and the potential to emit more than 3.0 pounds of VOC per hour or 15 pounds of VOC per day. Additionally, the Complaint alleges that Gershow has not installed RACT to control VOC emissions, or otherwise complied with 6 N.Y.C.R.R. § 212-3, which is part of the NY SIP.

C.      EPA issued Gershow a Notice of Violation on November 23, 2021 (the "Notice of Violation"), identifying alleged violations of the NY SIP and Title V of the Clean Air Act.

D.      Gershow does not admit the allegations in the Complaint or Notice of Violation, nor does it admit any liability to the United States arising out of the transactions or occurrences alleged therein.

E.      The Parties recognize, and the Court by entering this Consent Judgment finds, that this Consent Judgment has been negotiated by the Parties in good faith; will avoid litigation between the Parties; and that this Consent Judgment is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), and over the Parties. Venue lies in this District pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the Facility is located in this District and because the alleged violations occurred in this District. For purposes of this Consent Judgment, or any action to enforce this Consent Judgment, Gershow consents to the Court's jurisdiction over this Consent Judgment and any such action and over Gershow, and consents to venue in this judicial district.

2.      For purposes of this Consent Judgment, Gershow does not contest that the Complaint states claims upon which relief may be granted pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b).

## II. APPLICABILITY

3.      The obligations of this Consent Judgment apply to and are binding upon the United States, and upon Gershow and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Gershow of its obligation to ensure that the terms of the Consent Judgment are implemented. At least 30 Days prior to such transfer, Gershow shall provide a copy of this Consent Judgment to the proposed transferee and shall simultaneously

provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA, DOJ, and the United States Attorney for the Eastern District of New York, in accordance with Section XIV (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Consent Judgment.

5.      Gershow shall provide a copy of this Consent Judgment to all officers of Gershow whose duties might reasonably include compliance with any provision of this Consent Judgment, as well as to any contractor retained to perform work required under this Consent Judgment. For all employees whose duties might reasonably include compliance with any provision of this Consent Judgment, as well as for any contractor or agent retained to perform work required under this Consent Judgment, Gershow must provide a copy of the portions of this Consent Judgment that are applicable to the employee's, contractor's, or agent's duties. Gershow shall condition any such contract upon performance of the work in conformity with the terms of this Consent Judgment.

6.      In any action to enforce this Consent Judgment, Gershow shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Judgment.

### III. OBJECTIVES

7.      The objectives of this Consent Judgment are to: (a) resolve claims for violations of the Clean Air Act and the NY SIP, through payment of a civil penalty; and (b) implement injunctive relief to ensure that VOC emissions from the metal shredder at the Facility are within the limits specified by the NY SIP at 6 N.Y.C.R.R. § 212-3.

## IV. DEFINITIONS

8.      Terms used in this Consent Judgment that are defined in the Clean Air Act or in regulations promulgated pursuant to the Clean Air Act have the meanings assigned to them in the Clean Air Act or such regulations, unless otherwise provided in this Consent Judgment. Whenever the terms set forth below are used in this Consent Judgment, the following definitions apply:

"Complaint" means the complaint filed by the United States in this action;

"Consent Judgment" means this Consent Judgment;

"Continuous Emissions Monitoring System" or "CEMS" means for obligations involving VOC under this Consent Judgment, the total equipment and software required to sample and condition (if applicable), to analyze, and to provide a record of VOC emission rates and which equipment has been installed and calibrated in accordance with 40 CFR Part 60, Appendices B and F.

"Day" means a calendar day unless expressly stated to be a business day. In computing any period of time for a deadline under this Consent Judgment, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day;

"Defendant" or "Gershow" means the Defendant, Gershow Recycling Corporation; "DOJ" means the United States Department of Justice and any of its successor departments or agencies;

"Date of Lodging" means the date that this Consent Judgment is filed with the Court.

"EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

"Effective Date" means the definition provided in Section XV;

"Facility" means Gershow's metal shredding facility located at 71 Peconic Avenue, Medford, New York 11763;

4

"Natural Draft Opening" or "NDO" has the meaning in Paragraph 3.1 of EPA Method 204 for a Permanent Total Enclosure (40 C.F.R. Part 51, Appendix M), which defines a natural draft opening as "Any permanent opening in the enclosure that remains open during operation of the facility and is not connected to a duct in which a fan is installed." For the purposes of Paragraph 14 of this Consent Judgment, this definition shall include all newly identified or enlarged openings discovered through inspections, as well as any permanent openings present by design;

"NYSDEC" means the New York State Department of Environmental Conservation and any successor department or agency;

"Operating Day" means a Day in which the shredder processes scrap metal for at least one hour;

"Paragraph" means a portion of this Consent Judgment identified by an Arabic numeral;

"Parties" means the United States and the Gershow;

"Section" means a portion of this Consent Judgment identified by a Roman numeral;

"Shredder" means the hammermill shredder at the Facility;

"United States" means the United States of America, acting on behalf of EPA.

## V. CIVIL PENALTY

9.      Within 30 Days after the Effective Date, Gershow shall pay the sum of $555,000 to the United States as a civil penalty, together with interest accruing from the date on which the Consent Judgment is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

10.     Gershow shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to Gershow by the Financial Litigation Program ("FLP") of the United States Attorney's Office for the Eastern District of New

York. The payment instructions provided by the FLP will include a Consolidated Debt Collection System ("CDCS") number, which Gershow shall use to identify all payments required to be made in accordance with this Consent Judgment. The FLP will provide the payment instructions to:

> Kevin Gershowitz, President
> Gershow Recycling Corporation
> 71 Peconic Avenue
> Medford, New York 11763
> Phone: 631-289-6188
> Kevin@gershow.com
>
> Stephen Richmond
> Beveridge & Diamond, P.C.
> 155 Federal Street, Suite 1600
> Boston, MA 02110-1716
> Phone: 617-419-2310
> srichmond@bdlaw.com

on behalf of Gershow. Gershow may change the individual to receive payment instructions on their behalf by providing written notice of such change to DOJ and EPA in accordance with Section XIV (Notices).

11.     At the time of payment, Gershow shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to DOJ via email or regular mail in accordance with Section XIV; and (iii) to EPA in accordance with Section XIV.

12.     Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Judgment in *United States of America v. Gershow Recycling Corporation*, and shall reference the civil action number, CDCS Number and DOJ case number 90-5-2-1-12657.Gershow shall not deduct any penalties paid under this Consent Judgment pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal income tax.

## VI.    COMPLIANCE REQUIREMENTS

13.    Gershow shall comply with provisions of the NY SIP as applicable here per the Notice of Violation.

14.    <u>Emission Capture System</u>. Gershow shall install, operate and maintain a capture system at the Shredder consisting of flaps and panels, piping and a draft fan ("Capture System") to capture shredder emissions and route them to the Air Pollution Control Equipment required under Paragraph 15 of this Consent Judgment.

(a)    <u>Design of System</u>. The Capture System shall be designed and constructed consistent with the requirements of EPA Method 204 for a Permanent Total Enclosure (40 C.F.R. Part 51, Appendix M), or an alternative design if Gershow can demonstrate that the proposed design captures not less than 95% of emissions from shredding operations, is consistent with the engineering principles contained in Method 204, and EPA approves such alternative design. Whether the system uses Method 204 or an alternative design, the Capture System's design and construction shall take into account the Shredder's operational, maintenance and repair requirements and safety concerns. The design will include, at a minimum, a collection point for emissions from the infeed chute and the under-mill oscillator material discharge area, with adequate fan capacity and distribution of draft and an initial design facial velocity of at least 500 feet per minute ("fpm"). The design must also include a volumetric air flow monitor within the ductwork connecting the enclosure(s) to the Air Pollution Control Equipment and located after the particulate matter control devices and the system fans (but prior to the thermal oxidizer), and Gershow must perform periodic calibration of this flow monitor in accordance with the manufacturer's recommendations.

(b) <u>Operation of System</u>.

(b)(1) Gershow will operate the Shredder with the Capture System as outlined in 14(a) above. Metal shredder operations have the potential to cause combustion events that may impact Capture System operations and create openings in the system. Consequently, Gershow will inspect the Capture System on a daily basis on any day during which the unit operates to identify any openings not consistent with the original system design. In the event that such inspections reveal openings that are inconsistent with the design, Gershow will calculate the area of all newly identified or enlarged openings, each opening's distance from the VOC emission point or exhaust point consistent with Method 204, and the revised temporary facial velocity of the Capture System. Gershow will calculate the revised temporary Facial Velocity on any Operating Day that an inspection shows newly identified or enlarged openings that are inconsistent with the enclosure design (or openings previously identified through this inspection process). Gershow will calculate the revised temporary Facial Velocity in accordance with the definition of Facial Velocity in Method 204. Records of discovery of any newly identified or enlarged openings and all required calculations shall be maintained on site for at least 2 years for possible review by inspectors.

(b)(2) If the revised temporary facial velocity calculation is less than 400 fpm, but equal to or greater than 200 fpm, Gershow will attempt to repair the Capture System to restore the designed facial velocity as soon as practicable and within fifteen (15) calendar days of discovery, with a first attempt to repair the enclosure within five (5) calendar days of discovery. If the Capture System cannot be restored to the designed Facial Velocity within 15 days of discovery, Gershow will notify the US EPA and NYSDEC and will repair the enclosure to original Facial Velocity design within 45 calendar days of discovery, or an alternate case-specific deadline agreed to by

Gershow and EPA, and will also conduct a root cause analysis and submit the results to the EPA and NYSDEC.

(b)(3) If the revised temporary Facial Velocity calculation of the Capture System is less than 200 fpm, but greater than 100 fpm, or if any newly identified or enlarged opening is closer than 4 equivalent diameters from the VOC emission point, or if the total area of all NDOs (including permanent openings by design and any newly identified or enlarged opening) exceeds 5 percent of the total enclosure area, Gershow will notify the US EPA and NYSDEC and make a first attempt to repair the enclosure within five (5) calendar days of discovery. The enclosure will be repaired within fifteen (15) days of discovery.  If the enclosure's Facial Velocity cannot be restored to a value of 200 fpm or greater within 15 (fifteen) days of discovery, or if any newly identified or enlarged opening is closer than 4 equivalent diameters from the VOC emission point and cannot be repaired within fifteen (15) days of discovery, or if the total area of all NDOs remains above 5 percent of the total enclosure area after fifteen (15) days, the unit shall not operate until such time as the enclosure is repaired. As an alternative corrective action to the requirement in subparagraph 14(b)(2) above, if the Facial Velocity is returned to 200 fpm or greater within fifteen (15) days of discovery, Gershow may comply with subparagraph (b)(2) above, while maintaining the original discovery date.

(b)(4) If the revised temporary Facial Velocity calculation of the enclosure(s) is less than 100 fpm, the unit shall not operate until such time as the enclosure is repaired. As an alternative corrective action to the requirement in this subparagraph 14(b)(3) above, if the Facial Velocity is returned to 200 fpm or greater, Gershow may comply with subparagraph (b)(2) above, while maintaining the original discovery date.

15.    <u>Air Pollution Control Equipment.</u> Gershow shall install, operate, and maintain the following Air Pollution Control Equipment at the Shredder:

(a) <u>Particulate Matter Control</u>. A particulate matter control device designed to effectively remove particulate for the efficient operation of the VOC Control device.

(b) <u>VOC Control.</u> A regenerative thermal oxidizer, or alternative equivalent VOC control device, that will achieve  98% destruction efficiency during operation, based on at least 500 ppmv VOC (as propane) at the regenerative thermal oxidizer inlet (or emissions of no more than 10 ppmv (as propane) if there is less than or equal to 500 ppmv VOC (as propane) to the thermal oxidizer inlet. If Gershow chooses to use an alternative equivalent VOC control device, it must provide a demonstration of its effectiveness to EPA and receive approval prior to installation.

(c) <u>Acid Gas Control.</u> An acid gas control device necessary to reduce levels of any acid gases generated by the VOC Control to meet any currently applicable Clean Air Act or State of New York requirements, as determined through the permitting process.

(d) <u>Approval</u>. All air pollution control equipment will be subject to permitting approvals by NYSDEC.

16.    <u>Monitoring.</u> Gershow must install a temporary CEMS that monitors the outlet VOC concentration of the regenerative thermal oxidizer. Gershow must ensure the CEMS is installed and calibrated prior to stack testing and operational during the performance testing required in Paragraph 19. Gershow must operate the temporary CEMS for a period of 60 Operating Days, and that period must include the performance test required under Paragraph 19. Gershow must operate the CEMS to meet the EPA's performance specifications under applicable sections of 40 CFR Part 60, Appendices B and F. A data acquisition and handling system (DAHS) must be used to record

and maintain all data monitored by the temporary CEMS and by the volumetric air flow monitor. In addition, Gershow shall install and continuously operate, at the time of initial startup of the capture and control system, a permanent thermocouple monitoring device to continually monitor the combustion temperature of the regenerative thermal oxidizer or alternative equivalent VOC control device described in Paragraph 15, in order to demonstrate continuous compliance with the NY SIP's VOC RACT Regulations, and the requirements in Paragraphs 14 and 15 of this Consent Judgment.

17. _Permit Application._ No later than six (6) months after the date of lodging, Gershow shall submit an application to NYSDEC for an air permit in accordance with 6 NYCRR Part 201 ("Air Permit") for the metal shredding operations at the Facility. The permit application must propose the installation and conditional operation of the Capture System as described in Paragraph 14, the Air Pollution Control Equipment as described in Paragraph 15, and the Monitoring Devices as described in Paragraph 16. In addition, the application must include a reevaluation of the Shredder's emissions of criteria pollutants, metal hazardous air pollutants, and toxic acid gasses from the shredder and the Air Pollution Control Equipment, as well as the applicable legal requirements associated with these emissions.

18. _Startup._ By no later than thirty (30) months after NYSDEC issues an Air Permit approval, Gershow will commence initial startup of the Capture System, and the Air Pollution Control Equipment described in Paragraphs 14, 15, and 16.

19. _Performance Test._ Gershow will conduct a Performance test designed to (1) demonstrate initial compliance with the VOC control provisions in the Air Permit and Paragraphs 14, 15, and 16 of this Consent Judgment, and (2) establish ongoing federally enforceable compliance requirements/operating parameter limits for the Air Pollution Control Equipment and

Enclosure and Capture System, to be incorporated into the permit as provided in Paragraph 20 of this Consent Judgment.

(a) <u>Test Plan.</u> At least 60 days prior to the initial startup discussed in Paragraph 18, Gershow will submit a performance test plan ("Test Plan") for EPA approval. The Test Plan must describe the test methods to be used for the Performance Test and must include a test program summary, the test schedule, data quality objectives, and both an internal and external quality assurance program for the Performance Test. In addition, the Test Plan will describe required and/or proposed operating parameters and averaging times that will be verified through the Performance Test as a means to monitor and demonstrate compliance with the requirements of Paragraphs 14, 15, and 16 of this Consent Judgment. The Test Plan will describe how data obtained from the Performance Test will be used for verifying and/or establishing operating parameters to be used for demonstrating ongoing compliance.

(b) <u>Test Timing.</u> Gershow will conduct the Performance Test within 180 days of initial startup or within two months after EPA approval of the test plan, whichever is later.

(c) <u>Test Report and Operating Parameter Limits.</u> Within 60 days of the completion of the Performance Test, Gershow will submit a report with the results of the test ("Test Report") to EPA for review and approval. If the results of the performance test fail to demonstrate compliance with Paragraphs 14, 15, and 16 of this Consent Judgment, VOC control provisions in the Air Permit, or any performance criteria in the Test Plan, then as part of the Test Report, Gershow will propose, for approval by EPA, corrective actions to achieve compliance with the emission and operational requirements under this Consent Judgment and/or appropriate federally enforceable operating parameters to assure

continuous compliance. If such corrective actions will also be subject to approval by NYSDEC, EPA will consult with NYSDEC during its review.

20.    Application to Amend Permit.  Within 60 days of EPA's approval of the Test Report submitted pursuant to Paragraph 19.c of this Consent Judgment, Gershow will apply to NYSDEC to modify the Air Permit secured under Paragraph 17 if a modification is necessary to include in the permit additional VOC-related federally enforceable operating parameters derived from the data in the approved Test Report.

21.    By six months after start up, Gershow will achieve full compliance with Paragraphs 14 and 15 of this Consent Judgment

22.    Recordkeeping. In accordance with Section XI (Information Collection and Retention), Gershow shall keep records of the monitored values and operating parameter limits that are established in the Air Permit for the Enclosure and Capture System and Air Pollution Control Equipment under Paragraphs 16 (Monitoring), 19 (Performance Test), and 20 (Application to Amend Permit) of this Consent Judgment.

23.    Approval of Deliverables. After review of any plan, report, or other item that is required to be submitted to EPA pursuant to this Consent Judgment, EPA will in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission. Where a deliverable is also subject to the approval of NYSDEC, EPA will consult with NYSDEC.

24.    If the submission is approved pursuant to Paragraph 23(a), Gershow shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part pursuant to Paragraph 23(b) or (c), Gershow shall, upon written

direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions.

25.     If the submission is disapproved in whole or in part pursuant to Paragraph 23(c), Gershow shall, within 60 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Gershow shall proceed in accordance with the preceding Paragraph.

26.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Gershow to correct any deficiencies, in accordance with the preceding Paragraphs.

27.     If Gershow elects to invoke Dispute Resolution as set forth in Section X (Dispute Resolution) concerning a decision by EPA to disapprove, approve on specified conditions, or modify a deliverable, Gershow shall do so by sending a Notice of Dispute in accordance with Paragraph 54 within 30 Days (or such other time as the Parties agree to in writing) after receipt of the applicable decision.

28.     Any stipulated penalties applicable to the original submission, as provided in Section VIII, accrue during the 45 Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Gershow's obligations under this Consent Judgment, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

29.     Permits. Where any compliance obligation under this Section requires Gershow to obtain a federal, state, or local permit or approval, Gershow shall submit timely and

administratively complete applications and take all other actions necessary to obtain all such permits or approvals. Gershow may seek relief under the provisions of Section IX (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and administratively complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VII. REPORTING REQUIREMENTS

30.    Gershow shall submit the following reports to EPA and DOJ at the addresses set forth Section XIV (Notices):

(a) By April 30th, July 31st, October 31st, and January 31st of each year after the Date of Lodging of this Consent Judgment, until termination of this Consent Judgment pursuant to Section XVIII, Gershow shall submit a quarterly report for the preceding three months that includes the status of the following milestones, including, at a minimum, any activities undertaken toward achieving the milestones, together with problems encountered or anticipated and implemented or proposed solutions:

(1) Capture System in Paragraph 14;

(2) Air Pollution Control Equipment in Paragraph 15;

(3) Monitoring in Paragraph 16;

(4) Applications to permit or to amend the permit as described in Paragraphs 17 and 20;

(5) Startup of the emission enclosure and capture system and air pollution control equipment as described in Paragraph 14, including the status of all design and construction steps necessary to achieve timely startup;

15

(6) Performance Test Plan as described in Paragraph 18.a;

(7) Performance Test Timing as described in Paragraph 18.b;

(8) Performance Test Report as described in Paragraph 18.c;

(9) A report containing all hourly CEMs data collected during the required period of operation as described in Paragraph 16.

(b) The report shall also include a description of any non-compliance with the requirements of this Consent Judgment and an explanation of the likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such noncompliance. If Gershow violates, or has reason to believe that it may violate, any requirement of this Consent Judgment, Gershow shall notify EPA and DOJ of such violation and its likely duration, in writing, within 30 Days of the Day Gershow first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Gershow shall so state in the report. Gershow shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Gershow becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Gershow of its obligation to provide the notice required by Section IX (Force Majeure).

31.     Whenever any violation of this Consent Judgment or of any applicable permits or any other event affecting Gershow's performance under this Consent Judgment may pose an immediate threat to the public health or welfare or the environment, Gershow shall notify EPA by telephone at Robert Buettner, 212-637-5031, or by email to Robert Buettner, at

buettner.robert@epa.gov, as soon as possible, but no later than 24 hours after Gershow first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

32.     Each report submitted by Gershow under this Section shall be signed by an authorized representative of the submitting party and include the following certification:

I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

33.     The certification requirement set forth in Paragraph 32 does not apply to emergency or similar notifications where compliance would be impractical.

34.     The reporting requirements of this Consent Judgment do not relieve Gershow of any reporting obligations required by the Clean Air Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

35.     Any information provided pursuant to this Consent Judgment may be used by the United States in any proceeding to enforce the provisions of this Consent Judgment and as otherwise permitted by law.

## VIII. STIPULATED PENALTIES

36.     Gershow shall be liable for stipulated penalties to the United States for violations of this Consent Judgment as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Consent Judgment, including any work plan or schedule approved under this Consent Judgment, according to all applicable requirements of this Consent Judgment and within the specified time schedules established by or approved under this Consent Judgment.

37.     Late Payment of Civil Penalty. If Gershow fails to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, Gershow shall pay a stipulated penalty of $2,000 per Day for each Day that the payment is late.

38.     Compliance Milestones.

The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Paragraphs 14, 15, 16, 17, 18, 19, 20, and 21 of this Consent Judgment:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 30th Day |
| $2,500 | 31st Day and beyond |

39.     Reporting Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VII:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 30th Day |
| $750 | 31st Day and beyond |

40.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to

18

accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Judgment.

41.     Gershow shall pay any stipulated penalty within 30 Days of receiving the United States' written demand subject to Paragraphs 43 and 60.

42.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Judgment.

43.     Stipulated penalties shall continue to accrue as provided in Paragraph 37, during any Dispute Resolution, but need not be paid until the following:

> (a) If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Gershow shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

> (b) If the dispute is appealed to the Court and the United States prevails in whole or in part, Gershow shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

> (c) If any Party appeals the District Court's decision, Gershow shall pay all accrued penalties determined to be owing, together with interest, within 30 Days of receiving the final appellate court decision.

44.     Gershow shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 10 and with the confirmation notices required by Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

45.     If Gershow fails to pay stipulated penalties according to the terms of this Consent Judgment, Gershow shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Gershow's failure to pay any stipulated penalties.

46.     The payment of penalties and interest, if any, shall not alter in any way Gershow's obligation to complete the performance of the requirements of this Consent Judgment.

47.     Non-Exclusivity of Remedy. Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Judgment. Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Gershow's violation of this Consent Judgment or applicable law, including but not limited to an action against Gershow for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt, and Gershow reserves all rights, remedies and defenses to object to such other relief. However, the amount of any statutory penalty assessed for a violation of this Consent Judgment shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Judgment.

## IX. FORCE MAJEURE

48.     "Force majeure," for purposes of this Consent Judgment, is defined as any event arising from causes beyond the control of Gershow, of any entity controlled by Gershow, or of Gershow's contractors that delays or prevents the performance of any obligation under this Consent Judgment despite Gershow's best efforts to fulfill the obligation. The requirement that Gershow exercises "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as

20

it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Gershow's financial inability to perform any obligation under this Consent Judgment.

49.     If any event occurs or has occurred that will likely delay the performance of any obligation under this Consent Judgment, whether or not caused by a force majeure event, Gershow shall provide notice by telephone to Robert Buettner at 212-637-5031, or by email to Robert Buettner, at buettner.robert@epa.gov, within seven (7) Days of when Gershow first knew or should have known that the event might cause a delay. Within ten (10) Days thereafter, Gershow shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Gershow, such event may cause or contribute to an endangerment to public health, welfare or the environment. Gershow shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Gershow from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Gershow shall be deemed to know of any circumstance of which Gershow, or any entity controlled by Gershow, knew or should have known.

50.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Judgment that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force

majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Gershow in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

51.    If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Gershow in writing of its decision.

52.    If Gershow elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 45 Days after receipt of EPA's notice. In any such proceeding, Gershow shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Gershow complied with the requirements of Paragraphs 49 and 50. If Gershow carries this burden, the delay at issue shall be deemed not to be a violation by Gershow of the affected obligation of this Consent Judgment.

## X. DISPUTE RESOLUTION

53.    Unless otherwise expressly provided for in this Consent Judgment, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Judgment. Gershow's failure to seek resolution of a dispute under this Section shall preclude Gershow from raising any such issue as a defense to an action by the United States to enforce any obligation of Gershow arising under this Consent Judgment.

54.    Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Judgment shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Gershow sends DOJ and EPA a written Notice of Dispute. Such

Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 60 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Gershow invokes formal dispute resolution procedures as set forth below.

55.     Formal Dispute Resolution. Gershow shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ and EPA a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Gershow's position, and any supporting documentation relied upon by Gershow.

56.     The United States will send Gershow its Statement of Position within 45 Days of receipt of Gershow's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position is binding on Gershow, unless Gershow files a motion for judicial review of the dispute in accordance with the following Paragraph.

57.     Judicial Dispute Resolution. Gershow may seek judicial review of the dispute by filing with the Court and serving on the United States in accordance with Section XIV (Notices) a motion requesting judicial resolution of the dispute. The motion (a) must be filed within 30 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph; (b) may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 54, unless the Plaintiffs raise a new issue of law or fact in the Statement of Position; (c) shall contain a written statement of

23

Gershow's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and (d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Judgment, consistent with the Local Rules of the United States District Courts for the Southern and Eastern District of New York ("Local Rules").

58.     The United States shall respond to Gershow's motion within the time period allowed by the Local Rules. Gershow may file a reply memorandum, to the extent permitted by the Local Rules.

59.     <u>Standard of Review</u>.  Except as otherwise provided in this Consent Judgment, in any dispute brought under Paragraph 55 of this Consent Judgment (Formal Dispute Resolution), Gershow shall bear the burden of demonstrating that its position complies with this Consent Judgment and the Clean Air Act, and that it is entitled to relief under applicable principles of law. The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law, and Gershow reserves the right to oppose that position.

60.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Gershow under this Consent Judgment, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 43. If Gershow does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. INFORMATION COLLECTION AND RETENTION

61. The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Judgment, at all reasonable times, upon presentation of credentials, to:

(a) monitor the progress of activities required under this Consent Judgment;

(b) verify any data or information submitted to the United States in accordance with the terms of this Consent Judgment;

(c) obtain samples and, upon request, splits of any samples taken by Gershow or their representatives, contractors, or consultants, with respect to implementation of this Consent Judgment;

(d) obtain documentary evidence, including photographs and similar data, with respect to implementation of this Consent Judgment; and

(e) assess Gershow's compliance with this Consent Judgment.

62. Upon request, Gershow shall provide EPA or its authorized representatives splits of any samples taken by Gershow. Upon request, EPA shall provide Gershow splits of any samples taken by EPA.

63. Until five years after the termination of this Consent Judgment, Gershow shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Gershow's performance of its obligations under this Consent Judgment. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.

25

At any time during this information-retention period, upon request by the United States, Gershow shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

64. At the conclusion of the information-retention period provided in the preceding Paragraph, Gershow shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Gershow shall deliver any such documents, records, or other information to EPA. As relates to the preceding Paragraph and this Paragraph 64, Gershow may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Gershow asserts such a privilege, they shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Gershow. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Judgment shall be withheld on grounds of privilege.

65. Gershow may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Gershow seeks to protect as CBI, Gershow shall follow the procedures set forth in 40 C.F.R. Part 2.

66. This Consent Judgment in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of

Gershow to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

67.     This Consent Judgment resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action, and in the EPA Notice of Violation addressed to Gershow and dated November 23, 2021 through the date of lodging.

68.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Judgment. This Consent Judgment shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 67. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Gershow's Facility, whether related to the violations addressed in this Consent Judgment or otherwise.

69.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility or Gershow's violations, Gershow shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 67.

70.     This Consent Judgment is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Gershow are responsible for achieving and maintaining

complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Gershow's compliance with this Consent Judgment shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Judgment, warrant or aver in any manner that Gershow's compliance with any aspect of this Consent Judgment will result in compliance with provisions of the Clean Air Act, 42 U.S.C. §§ 7661 through 7661f, or with any other provisions of federal, State, or local laws, regulations, or permits.

71.     This Consent Judgment does not limit or affect the rights of Gershow or of the United States against any third parties not party to this Consent Judgment, nor does it limit the rights of third parties not party to this Consent Judgment, against Gershow, except as otherwise provided by law.

72.     This Consent Judgment shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Judgment.

## XIII. COSTS

73.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Gershow.

## XIV. NOTICES

74.     Unless otherwise specified in this Consent Judgment, whenever notifications, submissions, or communications are required by this Consent Judgment, they shall be made in writing and sent by email, addressed as follows:

As to the United States:

EES Case Management Unit
eescdcopy.enrd@usdoj.gov
Re: DOJ No. 90-5-2-1-12657

    And

Thomas R. Price
Assistant United States Attorney
United States Attorney's Office
Eastern District of New York
610 Federal Plaza
Central Islip NY 11722-4454
Phone: 631-715-7893
thomas.price@usdoj.gov

As to EPA:

Robert Buettner
Manager, Air Compliance Branch
United States Environmental Protection Agency,
Region 2
290 Broadway, Floor 21
New York, New York 10007
Phone: 212-637-5031
Fax: 212-637-3998
buettner.robert@epa.gov

    And

Liliana Villatora
Manager, Air Branch of Office of Regional Counsel
United States Environmental Protection Agency,
Region 2
290 Broadway, Floor 16
New York, New York 10007
Phone: 212-637-3218
Fax: 212-637-3199
villatora.liliana@epa.gov

As to Defendant:

Kevin Gershowitz, President
Gershow Recycling Corporation
71 Peconic Avenue
Medford, New York 11763
Phone: 631-289-6188
Kevin@gershow.com

    And

Stephen Richmond
Beveridge & Diamond, P.C.
155 Federal Street, Suite 1600
Boston, MA 02110-1716
Phone: 617-419-2310
srichmond@bdlaw.com

75.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

76.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Judgment or by mutual agreement of the Parties in writing.

## XV. EFFECTIVE DATE

77.     The Effective Date of this Consent Judgment shall be the date upon which this Consent Judgment is entered by the Court or a motion to enter the Consent Judgment is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to this Consent Judgment before entry, or the Court declines to enter the Consent Judgment, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVI. RETENTION OF JURISDICTION

78.     The Court shall retain jurisdiction over this case until termination of this Consent Judgment, for the purpose of resolving disputes arising under this Consent Judgment or entering orders modifying this Consent Judgment, pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Consent Judgment.

## XVII. MODIFICATION

79.     The terms of this Consent Judgment, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Modifications will be filed with the Court. Where the modification constitutes a material change to this Consent Judgment, it shall be effective only upon approval by the Court.

80.     Any disputes concerning modification of this Consent Judgment shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 59, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

81.     After Gershow has completed the requirements of Sections VI (Compliance Requirements) and has thereafter maintained compliance with the Consent Judgment and Gershow's Air Permit for a period of two (2) years, has complied with all other requirements of this Consent Judgment, and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Judgment, Gershow may serve upon the United States a Request for Termination, stating that Gershow has satisfied those requirements, together with all necessary supporting documentation.

82.     Following receipt by the United States of Gershow's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Gershow has satisfactorily complied with the requirements for termination of this Consent Judgment. If the United States agrees that the Consent Judgment may be terminated,

the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Judgment.

83.    If the United States does not agree that the Consent Judgment may be terminated, Gershow may invoke Dispute Resolution under Section X. However, Gershow shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of its Request for Termination.

## XIX. PUBLIC PARTICIPATION

84.    This Consent Judgment shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Judgment disclose facts or considerations indicating that the Consent Judgment is inappropriate, improper, or inadequate. Gershow consents to entry of this Consent Judgment without further notice and agrees not to withdraw from or oppose entry of this Consent Judgment by the Court or to challenge any provision of the Consent Judgment, unless the United States has notified Gershow in writing that it no longer supports entry of the Consent Judgment.

## XX. SIGNATORIES/SERVICE

85.    Each undersigned representative of Gershow, and the Assistant Attorney General of the Environment and Natural Resources Division of the Department of Justice identified on the DOJ signature page below, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Judgment and to execute and legally bind the Party he or she represents to this document.

86.    This Consent Judgment may be signed in counterparts, and its validity shall not be challenged on that basis. Gershow agrees to accept service of process by mail with respect to all

matters arising under or relating to this Consent Judgment and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of the summons and Complaint. Gershow need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Judgment.

## XXI. INTEGRATION

87.     This Consent Judgment constitutes the entire agreement among the Parties regarding the subject matter of the Consent Judgment and supersedes all prior representations, agreements, and understandings, whether oral or written, concerning the subject matter of the subject matter of the Consent Judgment herein.

## XXII. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

88.     For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance Paragraphs 5, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 29, 30, 31, 32, 61, 62, 63, and 64 is restitution, remediation, or required to come into compliance with law.

## XXIII. HEADINGS

89.     Headings to the Sections and Subsections of this Consent Judgment are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Judgment.

## XXIV. FINAL JUDGMENT

90.     Upon approval and entry of this Consent Judgment by the Court, this Consent Judgment shall constitute a final judgment of the Court as to the United States and Gershow. The

Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

Dated and entered this _8_ day of ___October_____, 2024__

    */s/ Gary R. Brown*

UNITED STATES DISTRICT JUDGE

FOR THE UNITED STATES OF AMERICA:

Date:  <u>August 19, 2024</u>                              Susan M. Akers
                                                        Deputy Chief
                                                        Environmental Enforcement Section
                                                        Environment and Natural Resources Division
                                                        U.S. Department of Justice
                                                        Washington, DC 20044-7611


                                                        BREON PEACE
                                                        United States Attorney

                                                        THOMAS PRICE  <small>Digitally signed by THOMAS PRICE
                                                        Date: 2024.08.19 11:09:42 -04'00'</small>

                                                        THOMAS R. PRICE
                                                        MATTHEW SILVERMAN
                                                        Assistant United States Attorneys
                                                        Eastern District of New York
                                                        610 Federal Plaza
                                                        Central Islip NY 11722-4454
                                                        Tel. 631-715-7893/718-254-6409
                                                        thomas.price@usdoj.gov
                                                        matthew.silverman@usdoj.gov

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Date August 7, 2024

PAUL SIMON
Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway, 17th Floor
New York, New York 10007

36

FOR GERSHOW RECYCLING CORPORATION:

Dated: 8/02/2024

Kevin Gershowitz, President
Gershow Recycling Corporation
71 Peconic Avenue
Medford, New York 11763
Phone: 631-289-6188
Kevin@gershow.com

37